UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Platinum Management, LLC, | File No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Ellis Corporation and Ludell Manufacturing Co., | |
| Defendants. | |

Plaintiff Platinum Management, LLC ("Platinum"), by and through its attorneys, for its Complaint against Defendants Ellis Corporation ("Defendants"), states and alleges as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff Platinum Management, LLC, is a Minnesota limited liability company providing full-service consulting services to companies in need of turnaround services and has a principal business address located at 9855 West 78th Street, Suite 50, Eden Prairie, MN 55344.

2. Defendant Ellis Corporation ("Ellis"), is an Illinois corporation specializing in the manufacturing of industrial machinery in laundry, wastewater treatment, and heat transfer applications, and has a principal business address located at 1400 W. Bryn Mawr Avenue, Itasca, IL 60143.

3. Defendant Ludell Manufacturing, Co. ("Ludell"), is an Illinois corporation and a subsidiary of Ellis Corporation specializing in metal fabrication, design of heat

exchangers and engineering energy conservation and water systems, and has a principal business address located at 5200 West State Street, Milwaukee, WI 53208.

4. Both Ellis and Ludell are part of a joint enterprise made up of several businesses including Grevr Equities, Inc., and RHF Enterprises, LLC, owned by members of the Fesmire family including but not limited to Robert H. Fesmire Sr. and Victoria Fesmire.

5. Upon information and belief, third-party Grevr Equities, Inc. ("Grevr"), is an Illinois corporation owned by Robert H. Fesmire, Sr. and Victoria Fesmire that owns the property located at 1400 W. Bryn Mawr Avenue, Itasca, IL 60143, which is also Ellis's principal place of business.

6. Upon information and belief, third-party RHF Enterprises, LLC ("RHF"), is a Wisconsin limited liability company owned by Robert H. Fesmire, Sr. that owns the property located at 5200 West State Street, Milwaukee, WI 53208, which is also Ludell's principal place of business.

7. Robert H. Fesmire, Sr., is the President of Ellis, Ludell, Grevr and RHF.

8. Jurisdiction is appropriate pursuant to 28 U.S.C. § 1331, as Plaintiff raises federal questions. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law.

9. Venue is appropriate pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of the property that is subject of the action is situated within the District of Minnesota.

## **FACTUAL BACKGROUND**

### *Financial Condition of Defendants as of July 2009*

10. Upon information and belief, as of July 2009, Defendants were experiencing significant financial hardship.

11. Under the terms of a Forbearance Agreement entered into with Ellis' lender, Defendants were required to retain a turnaround consultant to help improve Defendants' consolidated financial condition.

### *The Contract Among the Parties*

12. On or about July 16, 2009, Platinum and Defendants signed and executed an agreement (the "Preliminary Agreement"), whereby Platinum agreed to perform an in-depth analysis of Defendants' business operations in exchange for a retainer fee of $7,500.00 per week. A true and correct copy of the Preliminary Agreement is attached hereto as **Exhibit A**.

13. On or about August 18, 2009, Platinum and Defendants signed and executed a long-term consulting agreement (the "Agreement"), whereby Platinum would help Defendants "achieve the goals of improving the management, operations and cash flow of the business." A true and correct copy of the Agreement is attached hereto as **Exhibit B**.

14. Under the Agreement, Platinum worked on-site for a minimum of three (3) days per week to improve operations for the duration of the contract "to develop, implement and lead the organization to make the necessary changes to facilitate a turnaround and improve operating and financial performance."

15. To facilitate Defendants' turnaround, Platinum stepped in as Defendants' Chief Operating Officer and Chief Financial Officer, implemented a business plan to improve revenue and reduce expenses, streamlined plant operations, refocused Defendants' manufacturing efforts on more profitable activities, overhauled Defendants' supply chain, restored Defendants' vendor relationships and negotiated a Forbearance Agreement with Defendants' lender to preserve existing funding and to identify and hire a new CFO.

16. In return for the provision of these services, Platinum was compensated with a weekly retainer fee of $7,500.00 per week, plus certain "Success Fees" contingent upon improvement in Defendants' operating cash flow.

17. The Agreement also contained a separate provision "[i]n addition to the . . . weekly retainer and success fees" whereby Defendants, upon receipt of additional financing, were to compensate Platinum a percentage of the financing received ("Transaction Fees").

18. The Agreement contained two (2) separate forms of Transaction Fees that differed in terms of the amount of the Transaction Fee and the conditions upon which Platinum became entitled to the Transaction Fee.

19. The first component of the Transaction Fee provision provided that "[Defendants] will compensate Platinum at a rate of three percent (3%) of **any monies secured on behalf of [Defendants]** from an **existing** senior secured lender or sub debt lender." (Emphasis added.)

20. The second component of the Transaction Fee provision provided that "[Defendants] will compensate Platinum at a rate of . . . five percent (5%) for **any monies provided by new** lenders or investors who are not currently providing capital to [Defendants]." (Emphasis added.)

21. Under the Agreement, the Transaction Fees "will survive this agreement for a period of 12 months **following** the end of this engagement" (emphasis added).

22. For the duration of the Agreement, Platinum spent significant time and energy working for Defendants and to improve Defendants' creditworthiness and accounting practices so as to receive bank financing.

23. Early in Platinum's turnaround efforts, Platinum was able to secure an additional $100,000.00 of financing from Defendants' existing lender, and Defendants paid $3,000.00 to Platinum upon the securing of this financing as was required under the terms of the Agreement.

24. As a result of Platinum's efforts, Defendants experienced significant benefits in 2010.

*The Termination of the Agreement and Ellis's Subsequent Receipt of Financing*

25. On or about November 11, 2010, the Parties mutually agreed that the turnaround effort was near completion, and signed and executed an engagement letter that ended the agreement, dated August 18, 2009. A true and correct copy of this letter is attached hereto as **Exhibit C**.

26. On May 23, 2011, Defendants were provided financing from FirstMerit Bank, N.A. ("FirstMerit"). A true and correct copy of the letter outlining this approval is attached hereto as **Exhibit D**.

27. Upon information and belief, at the time the Agreement was entered into, FirstMerit was not providing capital to Defendants.

28. The financing consisted of four separate loans cross collateralized by the assets of the Defendants.

29. The first loan was a $2,500,000.00 line of credit extended to Ellis, secured by Ellis's business assets, a personal guarantee from Robert H. Fesmire, Sr., and corporate guarantees from Ludell, Grevr and RHF.

30. The second loan was a $1,000,000.00 revolving line of credit extended to Ludell, secured by Ludell's business assets, a personal guarantee from Robert H. Fesmire, Sr., and corporate guarantees from Ellis, Grevr and RHF.

31. The third loan was a $2,325,000.00 real estate loan extended to Grevr, secured by the property located at 1400 W. Bryn Mawr Ave., Itasca, IL 60143, a personal guarantee from Robert H. Fesmire, Sr., and corporate guarantees from Ellis, Ludell and RHF.

32. The fourth loan was a $630,000.00 real estate loan extended to RHF, secured by the property located at 5200 W. State St., Milwaukee, WI 53208, a personal guarantee by Robert H. Fesmire, Sr., and corporate guarantees from Ellis, Ludell and Grevr.

33. The financing provided to Defendants by FirstMerit totaled $6,455,000.00.

34. Under the terms of the Agreement, as of May 23, 2011, Defendants owed Platinum five percent (5%) "of the monies provided by" FirstMerit to Defendants, equal to $322,750.00.

35. In or around July 2011, before the present dispute arose, Platinum approached Robert H. Fesmire, Sr., and asked permission to enter the story of Defendants' turnaround in the Turnaround of the Year competition organized by the Minnesota Chapter of the Turnaround Management Association. A true and accurate copy of the application is attached hereto as **Exhibit E**.

36. Robert H. Fesmire, Sr., initially verbally consented to Platinum's entering Defendants' turnaround story in this competition.

37. Robert H. Fesmire, Sr. later withdrew this consent for reasons of confidentiality, but in so doing stated in a July 19, 2011, email to Platinum that he "will give verbal recommendations regarding the success we have had with Platinum but nothing in writing."

38. Soon after this time, Platinum became aware of the fact that Defendants had secured financing from FirstMerit.

39. Platinum demanded payment of $322,750.00 pursuant to the Agreement.

40. Despite Robert H. Fesmire, Sr.'s July 19, 2011, email regarding the Defendants' successes with Platinum, and its demand for payment, Defendants have failed or refused to pay the amount due to Platinum.

## COUNT I
## BREACH OF CONTRACT

41. Platinum restates and realleges the foregoing paragraphs as though fully stated herein.

42. Platinum and Defendants entered into the Agreement attached hereto as Exhibit B.

44. The Agreement constitutes a valid, enforceable contract under Minnesota law pursuant to which Platinum was entitled to five percent (5%) of any monies provided to Defendants by a lender that was not extending credit to Defendants at the time the Agreement was formed during the period beginning on the commencement of the Agreement until twelve (12) months after the termination of the Agreement.

45. Defendants were provided $6,455,000.00 of financing within twelve (12) months of the termination of the Agreement by a lender that was not providing financing to Defendants when the Agreement was formed.

46. Defendants have failed to perform their obligations under the Agreement with Platinum by failing to compensate Platinum under the terms of the Agreement.

47. Defendants have breached their Agreement with Platinum.

48. As a direct and proximate result of Defendants' actions as set forth above, Platinum has suffered damages in the amount of Three Hundred Twenty-Two Thousand Seven Hundred Fifty and 00/100 Dollars ($322,750.00) plus certain costs, interest, disbursements and attorneys' fees, the exact amount of which to be determined at trial.

## COUNT II
## UNJUST ENRICHMENT
### (Alternative Count)

51. Platinum restates and realleges the foregoing paragraphs as though fully stated herein.

52. Defendants have unlawfully received a benefit from Platinum including, without limitation, the receipt of certain services from Platinum to improve Defendants' creditworthiness, business operations and general ability to qualify for financing.

53. Defendants knowingly accepted these benefits.

54. Defendants appreciated the benefits conferred upon them.

55. Defendants have been unjustly enriched by the receipt of Platinum's services without paying the reasonable value thereof due Platinum.

56. Platinum has been damaged as a result of the actions of Defendants.

57. Under the circumstances as set forth herein, it would be inequitable for Defendants to retain the benefits conferred upon them without paying Platinum for the value of said benefits.

58. As a direct and proximate result of Defendants' actions as set forth above, Platinum has suffered damages in the amount of Three Hundred Twenty-Two Thousand Seven Hundred Fifty and 00/100 Dollars ($322,750.00), plus certain costs, interest, disbursements and attorneys' fees, the exact amount of which to be determined at trial.

## COUNT III
## PROMISSORY ESTOPPEL
### (Alternative Count)

59. Platinum restates and realleges the foregoing paragraphs as though fully stated herein.

60. Defendants made a clear and definite promise to Platinum to pay them five percent (5%) of financing received between the date that the Agreement was formed and twelve (12) months after the termination of the Agreement.

61. Defendants intended to induce Platinum to rely on its promises.

62. Platinum reasonably relied upon the promises of Defendants.

63. Defendants have not fulfilled these promises as set forth above.

64. As a direct and proximate result of Platinum's reliance on the promises of Defendants, Platinum has and continues to suffer damages in an amount in excess of $50,000.00, plus reasonable attorneys' fees, costs and disbursements, the exact amount to be determined at trial.

## COUNT IV
## QUANTUM MERUIT
### (Alternative Count)

65. Platinum restates and realleges the foregoing paragraphs as though fully stated herein.

66. Defendants have alleged that some of the work performed by Platinum during the course of the Agreement was outside the scope of the Agreement and/or was not documented to Defendants' satisfaction.

67. Platinum did substantial work for Defendants' benefit with Defendants' full and actual knowledge.

68. Defendants have failed to fully compensate Platinum for the cost of its consulting services that provided significant benefit to Defendants in the form of financing provided by a lender not extending credit to Defendants at the time the Agreement was entered into.

69. Platinum is entitled to the full market rate compensation in connection with any work Defendants successfully prove was outside the scope of the Agreement, the amount of which is in excess of $50,000.00, plus reasonable attorneys' fees, costs, and disbursements, the exact amount of which are to be determined at trial.

**WHEREFORE**, Platinum prays for relief against Defendants as follows:

1. An Order entering judgment against Defendants, in favor of Platinum in the amount of Three Hundred Twenty-Two Thousand Seven Hundred Fifty and 00/100 Dollars ($322,750.00) in addition to punitive damages and interest as provided by Minnesota law;

2. For a judgment sounding in equity to properly and justly implement the orders and judgments of the Court; and

3. For such other and further relief as the Court deems just and equitable under the facts and circumstances of this case.

**SKJOLD PARRINGTON, P.A.**

Dated: November 30, 2011.

s/ Christopher P. Parrington
Christopher P. Parrington (#034090X)
cparrington@skjoldparrington.com
Patrick D. Boyle (#3090852)
pboyle@skoldparrington.com
Andrew S. Dosdall (#0391076)
adosdall@skjoldparrington.com
222 South 9th Street, Suite 3220
Minneapolis, MN 55402
[P]: 612-746-2560
[F]: 612-746-2561

*Attorneys for Plaintiff*