## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| **Platinum Management, LLC,** | **Civil No. 11-3523 (MJD/JJG)** |
| **Plaintiff,** | |
| **v.** | **REPORT AND RECOMMENDATION** |
| **Ellis Corporation and Ludell Manufacturing Co.,** | |
| **Defendants.** | |

---

JEANNE J. GRAHAM, United States Magistrate Judge

This matter came before the Court on April 19, 2012 for a hearing on Defendants' Motion to Dismiss (ECF No. 5) and Defendants' Motion to Transfer/Change Venue (ECF No. 17). The motions were referred to this Court by the Honorable Michael J. Davis, Chief Judge, United States District Court, in orders of reference dated January 5, 2012 (ECF No. 11) and February 24, 2012 (ECF No. 23). For the reasons set forth below, the Court recommends that the motions be denied.

## I.     ALLEGATIONS IN THE COMPLAINT

The facts in this section were derived from the allegations of the Complaint and the attached exhibits. Plaintiff Platinum Management, LLC ("Plaintiff") is a Minnesota company that provides consulting services to businesses. (Compl. ¶ 1.) Defendant Ellis Corporation ("Ellis"), an Illinois company, manufactures industrial machinery for laundry, wastewater treatment, and heat transfer uses. (Compl. ¶ 2.) Defendant Ludell Manufacturing Company ("Ludell") is an Illinois corporation and a subsidiary of Ellis. (Compl. ¶ 3.) Ludell specializes in metal fabrication and designs heat exchangers and energy conservation and water systems. (*Id.*)

Ellis's principal place of business is in Illinois, and Ludell's principal place of business is in Wisconsin. (Compl. ¶¶ 2, 3.) Ellis and Ludell (collectively "Defendants") are part of a joint enterprise owned by the Fesmire family. (Compl. ¶ 4.)

In July 2009, Ellis and Ludell experienced financial hardship and retained Plaintiff as a turnaround consultant. (Compl. ¶¶ 10-12.) Plaintiff, Ellis, and Ludell entered into a preliminary agreement under which Plaintiff would perform a six-week, in-depth analysis of "Ellis/Ludell" in exchange for a weekly consulting fee of $7,500.00. (Compl. ¶ 12.) Company President Robert Fesmire, Sr. signed the preliminary agreement on behalf of Ellis and Ludell. (Compl. Ex. A at 3.)

On August 20, 2009, the parties entered into a long-term consulting agreement ("Agreement"), under which Plaintiff would assist "Ellis/Ludell" in improving management, operations, and cash flow. (Compl. ¶ 13.) Plaintiff was designated the "Chief Restructuring Officer" of Ellis/Ludell. (Compl. Ex. B at 1.) Although the Agreement referred to Ellis and Ludell in the aggregate throughout the document, the signature block for corporate officers Robert and Tory Fesmire referred only to Ellis. (Compl. Ex. B at 2.) In exchange for Plaintiff's consulting services, Defendants agreed to pay Plaintiff a weekly fee of $7,500.00, plus success fees based on improving cash flow and transaction fees if Defendants secured new financing from new or existing lenders. (Compl. ¶¶ 16-20 & Ex. B at 1-2.) The parties agreed that the transaction fees would continue for twelve months after the Agreement was terminated. (Compl. ¶ 21 & Ex. B at 2.)

During the course of the turnaround, Plaintiff implemented a new business plan, streamlined operations, refocused manufacturing, revamped the supply chain, restored vendor relationships, and negotiated lending terms. (Compl. ¶ 15.) Plaintiff secured $100,000.00 in

additional financing from Defendants' current lender, and Defendants paid a $3,000.00 transaction fee to Plaintiff, as provided by the Agreement. (Compl. ¶ 23.)

In November 2010, the parties decided that the turnaround was nearly complete, and they executed an agreement to terminate services on November 19, 2010. (Compl. ¶ 25.) On May 23, 2011, Defendants received new financing in the amount of $6,455,000.00, consisting of four separate loans cross-collateralized by Defendants' assets. (Compl. ¶¶ 26, 33.) The first loan was a $2,500,000.00 line of credit; the second loan was a $1,000,000.00 revolving line of credit; the third loan was a $2,325,000.00 real estate loan; and the fourth loan was a $630,000.00 real estate loan. (Compl. ¶¶ 29-32.) Under the terms of the Agreement, Defendants owed Plaintiff five percent of the total amount, which equaled $322,750.00. (Compl. ¶ 34.) Defendants have not paid anything to Plaintiff. (Compl. ¶ 40.)

Based on the above events, Plaintiff brought suit against Defendants for breach of contract, unjust enrichment, promissory estoppel, and quantum meruit. Plaintiff alleges federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## II.   DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss the Complaint on three grounds: lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. Doubts about the Court's jurisdiction must be resolved before addressing the merits. *See Ebrahim v. Gonzales*, 471 F.3d 880, 883 (8th Cir. 2006); *Jordan v. United States*, 522 F.2d 1128, 1132 (8th Cir. 1975).

### A.   Subject Matter Jurisdiction

Defendants first seek dismissal for lack of subject matter jurisdiction. Plaintiff's Complaint alleges federal question jurisdiction pursuant to 28 U.S.C. § 1331 without alleging any claims arising under federal law. Plaintiff concedes the error and asks for permission to

amend its Complaint to allege diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff contends diversity jurisdiction is present because the parties are citizens of different states and the amount in controversy exceeds $75,000.00. Defendants do not dispute the existence of diversity jurisdiction.

The Court finds that Plaintiff made a simple, easily remediable error in pleading the basis for federal subject matter jurisdiction. Accordingly, the Court recommends that the Complaint not be dismissed on this basis, but that Plaintiff be permitted to amend its Complaint to properly assert diversity jurisdiction.[1]

**B.      Personal Jurisdiction**

Defendants also seek dismissal for lack of personal jurisdiction, asserting neither general nor specific jurisdiction exists.

**1.      Legal Standards**

As the party asserting jurisdiction, Plaintiff has the burden to establish it. *See Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008). When confronted with a factual attack on jurisdiction, as Defendants have mounted here, Plaintiff may not rest on its allegations but must present affidavits and exhibits in support of its assertion of jurisdiction. *See Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990); *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 260 (8th Cir. 1974). If the Court relies only on affidavits and pleadings, and does not hold an evidentiary hearing, "the court must look at the facts in the light most favorable to the nonmoving party . . .

---

[1] Plaintiff is an LLC. When determining the citizenship of an LLC for the purpose of assessing diversity jurisdiction, an LLC is deemed to be a citizen of every state in which a member is a citizen. *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). Thus, Plaintiff must plead sufficient facts about the citizenship of each of its members to establish complete diversity.

and resolve all factual conflicts in favor of that party." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991) (citations omitted)

Personal jurisdiction over a defendant in a suit founded on diversity will exist if (1) Minnesota's long-arm statute, Minn. Stat. § 543.19, is satisfied; and (2) the exercise of personal jurisdiction would not offend due process. *Guinness Import Co. v. Mark VII Distribs., Inc.*, 153 F.3d 607, 613-14 (8th Cir. 1998). Because Minnesota's long-arm statute extends jurisdiction to the fullest extent permitted under the United States Constitution, the only question is whether due process is satisfied. *Id.* at 614.

Due process requires Plaintiff to establish that Defendants "have certain minimum contacts" with Minnesota "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted). Defendants' "conduct and connection" with Minnesota must be such that they could "reasonably anticipate being haled into court" here. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A unilateral act by one who claims a relationship with Defendants will not suffice; rather, Plaintiff must produce evidence of some act through which Defendants "purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe Co.*, 326 U.S. at 319). Random, accidental, or attenuated contacts will not constitute purposeful availment. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted).

The sufficiency of Defendants' contacts are assessed according to five factors: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a

forum for its residents; and (5) convenience of the parties." *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). The first three factors are of greater consequence than the latter two. *Id.* The third factor distinguishes general jurisdiction from specific jurisdiction. *Id.*

General jurisdiction exists if Defendants' contacts with Minnesota are so "continuous and systematic" that they could be sued here over any dispute, regardless of where the claim arose. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). General jurisdiction "does not depend on the relationship between the cause of action and the contacts." *Burlington Indus.*, 97 F.3d at 1103. Specific jurisdiction, on the other hand, will exist if Plaintiff's claims arose from or were related to Defendants' actions in Minnesota. *See Burger King*, 471 U.S. at 472-73. Under such circumstances, "due process is satisfied if the defendant has purposely directed its activities at forum residents, and the litigation results from injuries arising out of, or relating to, those activities." *Burlington Indus.*, 97 F.3d at 1103.

## 2.    Specific Jurisdiction[2]

Plaintiff contends specific jurisdiction is present because Defendants purposely directed their activities at Plaintiff, a Minnesota resident, and Plaintiff's claims arose out of those activities. The business relationship between Plaintiff and Defendants began when Defendants contracted for turnaround consulting and management services with Plaintiff, a company located and headquartered in Minnesota. (Mallory Aff. ¶¶ 3, 4, 7, 11.) The Agreement provided in part that Plaintiff would "provide hands-on direction . . . in the capacity of Chief Restructuring Officer." (Mallory Aff. Ex. B at 1.) The parties further agreed that Pat Brennan, a partner with Plaintiff who lives and works in Minnesota, would "continue to manage vendor relationships on

---

[2] Although Plaintiff also made a brief argument for general jurisdiction, Defendants simply do not have the requisite continuous and systematic contacts with Minnesota.

behalf of Ellis/Ludell and will coordinate this effort from the Platinum office in Minneapolis." (*Id.*) Brennan was also directly involved in the relationships between Defendants and lending institutions, including FirstMerit, the bank that ultimately provided the $6,455,000.00 in new financing. (Mallory Aff. ¶¶ 44, 46.)

For months throughout the turnaround process, Plaintiff's Minnesota personnel communicated and negotiated with vendors and managed refinancing efforts on Defendants' behalf. (Mallory Aff. ¶ 16.) For example, three of Plaintiff's employees in Minnesota, including Patrick Brennan and Bruce Mallory, prepared a book of information for the purpose of obtaining financing for Defendants. (Mallory Aff. ¶¶ 31-32.) Plaintiff's agents and representatives performed a significant amount of work in Minnesota on Defendants' behalf to aid their refinancing and turnaround efforts. (Mallory Aff. ¶¶ 30, 57, 58.) Three members of the Fesmire family, all of whom are agents, officers, and representatives of Defendants, visited Plaintiff's Minnesota office during the course of the business relationship. (Mallory Aff. ¶ 17.) Defendants delivered weekly retainer fees and transaction fees to Plaintiff's office in Minnesota. (Mallory Aff. ¶¶ 21, 34.) Defendants communicated numerous times with Plaintiff's Minnesota personnel via conference calls utilizing Minnesota telephone numbers. (Mallory Aff. ¶¶ 41-42.) The parties also engaged in hundreds of written and oral communications between Illinois and Minnesota over a two-year period. (Mallory Aff. ¶¶ 52-56.)

The nature and quality of Defendants' contacts with Minnesota favor a finding of jurisdiction. It is particularly significant that Defendants reached out to and knowingly contracted with a Minnesota company to provide it with services they knew would be undertaken on their behalf in Minnesota. In addition, Defendants named Plaintiff their Chief Restructuring Officer for the purpose of orchestrating the turnaround of their troubled business, thereby

according Plaintiff significant status and power within the companies. Brennan managed Defendants' vendor relationships from Plaintiff's Minneapolis office, and he was directly involved in Defendants' refinancing efforts. Numerous other personnel in Minnesota also worked on Defendants' vendor relationships and refinancing. Three of Defendants' corporate officers visited Plaintiff's Minnesota office, and Defendants' representatives engaged in substantial correspondence and telephone calls with Plaintiff's personnel in furtherance of the turnaround efforts.

The second factor, the quantity of Defendants' contacts with Minnesota, also favors jurisdiction. Over a two-year period, Defendants participated in hundreds of telephone calls with Minnesota residents, made weekly payments to Plaintiff in Minnesota, sent letters to Plaintiff in Minnesota, and sent three corporate officers to visit Plaintiff's Minneapolis office.

As for the third factor, there is a direct connection between Plaintiff's claims and Defendants' contacts with Minnesota. Plaintiff is claiming a breach of the Agreement between the parties, as well as alternative theories of unjust enrichment, promissory estoppel, and quantum meruit. All of these claims are based on the Agreement and the parties' business relationship. All of Defendants' contacts with Minnesota were related to the Agreement and the services being performed by Plaintiff on Defendants' behalf. The alleged injury occurred to Plaintiff in Minnesota when Defendants failed to pay the transaction fee of $322,750.00 allegedly due under the Agreement.

Defendants assert that a contractual relationship alone cannot establish jurisdiction over a nonresident defendant, citing *K-V Pharmaceutical Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 593 (8th Cir. 2011). While this proposition is correct, the court in *K-V Pharmaceutical* actually found the existence of specific jurisdiction in Missouri after considering the defendant's

communications with the plaintiff, the involvement by the defendant's personnel in negotiating the contract, a meeting held in Missouri, product samples sent by the defendant to Missouri, payments made to the Missouri plaintiff, anticipated shipping of the product to Missouri, and a choice-of-law provision in the contract. *Id.* at 593-94. Granted, not all of these factors are present here, but the Eighth Circuit did not indicate that all of the factors were necessary, nor did the court indicate the question was even close. *See id.* at 596-97 (finding that the defendant's contacts with Missouri "substantially exceed[ed]" contacts in other cases). The most significant factors, as noted by the court, were the visit by company officials, the payment of money, and the exchange of correspondence and telephone calls, *id.* at 594-95, all of which are present here.

Defendants also suggest that Plaintiff's claims arise not from the Agreement between the parties, but from the loans Defendants obtained from FirstMerit, which were procured in Illinois. The Court rejects this mischaracterization of Plaintiffs' claims. Plaintiff is not suing for a breach of the loan agreements between Defendants and FirstMerit. Plaintiff is suing for a breach of the Agreement it entered with Defendants. Although the FirstMerit loan agreements may be relevant to prove Plaintiff's assertions that it was entitled to transaction fees and to establish the amount of damages, Plaintiff's claims arise from the Agreement between the parties.

Turning to the final two factors, Minnesota clearly has an interest in providing a forum for its residents, and Defendants do not argue otherwise. The convenience of the parties is evenly balanced, as Plaintiff's parties, witnesses, and evidence are located primarily in Minnesota, and Defendants' parties, witnesses, and evidence are located primarily in Illinois.

In sum, the Court concludes that Plaintiff has established the existence of specific jurisdiction over Defendants.

###### C.    The Sufficiency of Plaintiff's Claims Against Ludell

Plaintiff's Complaint alleges all claims against both Ellis and Ludell. Ludell now moves for dismissal of all counts against it on the ground that it was not a signatory to the Agreement.

Dismissal under Rule 12(b)(6) is proper when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Allegations that are "merely consistent with" liability are insufficient to create plausibility. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Generally, the Court may not consider matters outside the pleadings on a motion to dismiss. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). There are limited exceptions to this rule for matters of public record, judicial orders, documents necessarily embraced by the pleadings, and exhibits attached to the pleadings. *See id.* When a complaint's allegations conflict with the attached exhibits, the facts in the exhibits typically control. *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006).

The Agreement is attached as an exhibit to the Complaint. (Compl. Ex. B.) It is true, as Ludell asserts, that the signature block on the Agreement does not include a line for Ludell. However, other language in the Agreement signifies that Ludell was a party to the Agreement. For example, the subject line of the Agreement reads "ENGAGEMENT LETTER FOR CONTINUING WORK AT ELLIS & LUDELL." (Compl. Ex. B at 1.) The reference to continued services implies that Plaintiff and Ludell were already in a contractual relationship and

10

that Plaintiff and Ludell were entering into another agreement to continue those services. In addition, the Agreement refers to Ellis and Ludell jointly throughout, indicating that the entities were one and the same. Despite the omission of Ludell's name from the signature block, other language in the Agreement creates the possibility that it was a party to the contract. In other words, the contract is ambiguous regarding whether Ludell was a party to it. Ambiguity exists when a contract "is susceptible to more than one reasonable interpretation based on its language alone." *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 877 (8th Cir. 2010) (applying Minnesota law).

Here, the language of the Agreement is subject to two reasonable interpretations: (1) that Ludell was a party to the Agreement or (2) that it was not a party to the Agreement. Construing the Agreement in the light most favorable to Plaintiff, as the Court must on a motion to dismiss, the Court finds that the ambiguity creates the possibility that Ludell was a party to the Agreement, despite its omission from the signature block. Thus, dismissal of Ludell as a party in this action is not appropriate.

## III.   DEFENDANTS' MOTION TO TRANSFER VENUE

In the alternative to dismissal, Defendants move to transfer venue of this case to the United States District Court for the Northern District of Illinois. A court may, "for the convenience of the parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As suggested by the statute, three general categories guide a court's consideration of a transfer motion: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). Courts should "give considerable deference to a plaintiff's choice of forum," and the party

moving to transfer the action therefore "bears the burden of proving that a transfer is warranted." *Id.* at 695. If inconvenience would simply be shifted to the nonmoving party, transfer is not appropriate. *K-Tel Int'l, Inc. v. Tristar Prods., Inc.*, 169 F. Supp. 2d 1033, 1045-46 (D. Minn. 2001).

**A.      The Convenience of the Parties and Witnesses**

In evaluating the convenience factors, courts should consider "(1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law." *Terra Int'l, Inc.*, 119 F.3d at 696.

Beginning with the parties, Defendants are Illinois corporations with their respective principal places of business in Illinois and Wisconsin. Plaintiff is a Minnesota company, with its principal place of business in Minnesota. This factor is neutral.

With regard to witnesses, records, and documents, nearly all of Defendants' witnesses and documents are located in Illinois. Nearly all of Plaintiff's witnesses and documents are located in Minnesota, except for Plaintiff's primary representative on the turnaround project, Gary Colbert, who is a resident of Florida. The quantity of witnesses and evidence is relatively the same. According to Defendants, one of their key witnesses will be Anthony Balthazor, the FirstMerit loan officer who worked with Defendants on obtaining the new financing and who lives in Illinois. However, Defendants have not demonstrated Balthazor is unwilling to be deposed or appear at trial. Indeed, no prospective witness has manifested an unwillingness to appear in either forum, and the Court sees no impediment to the parties' ability to obtain deposition testimony or documents. In sum, evidentiary concerns are relatively equal.

The Agreement on which Plaintiff's claims are based was negotiated equally from Illinois and Minnesota. While much of the performance occurred in Illinois, substantial work was performed from Minnesota as well. As explained above, the Court rejects Defendants' contention that Plaintiff's claims are based on the FirstMerit loan agreements. Plaintiff's breach of contract, quantum meruit, unjust enrichment, and promissory estoppel claims are founded on the Agreement between Plaintiff and Defendants and the services Plaintiff provided to Defendants. While the FirstMerit loan agreements will have some relevance to the alleged breach and the calculation of damages, Plaintiff was not a party to those agreements, and they do not give rise to Plaintiff's claims. Considering that Plaintiff performed more of the contract in Illinois than Minnesota, however, this consideration tips slightly in Defendants' favor.

The parties did not brief the applicability of each forum's substantive law. Plaintiff referred to Minnesota law in the Complaint for its breach of contract count and prayer for relief, but it did not address choice-of-law issues in its briefing. When a plaintiff pleads a cause of action predicated on a particular state's law, it is appropriate to venue the case in that state. *In re Apple, Inc.*, 602 F.3d 909, 915 (8th Cir. 2010). While Defendants have expressed an intent to raise a defense based on the Illinois Loan Brokers Act of 1995, they failed to discuss why Illinois law would apply to Plaintiff's Minnesota law-based claims. Without a more developed foundation for assessing this factor, the Court must conclude at this time that it favors neither side.

### B.    The Interests of Justice

The interests-of-justice category includes "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the

advantages of having a local court determine questions of local law." *Terra Int'l, Inc.*, 119 F.3d at 696.

Six of the seven enumerated factors are relatively neutral. Although this case has not progressed to the discovery phase, there has been fairly extensive motion practice since the Complaint was filed. Defendants have not presented any statistics or other evidence showing the case would be resolved any quicker in the Northern District of Illinois than the District of Minnesota. Thus, judicial economy favors neither side. Additionally, there appears to be no impediment to enforcing a judgment in Minnesota or Illinois, and both forums would provide a fair trial. Further, both parties are sophisticated, successful business entities, who have shown no inability to bear the costs of litigation. As discussed above, it is unclear at this point whether Minnesota or Illinois law will apply. Regardless, there is no real advantage to having a local court decide local issues of law, because the issues are relatively simple, straightforward, and few in number.

Weighing against transfer is Plaintiff's choice of forum, which is Minnesota. Courts should give considerable deference to a plaintiff's choice of forum, as long as the plaintiff has a "relevant connection" with the forum. *In re Apple, Inc.*, 602 F.3d at 913. In *In re Apple*, the plaintiff was based in Taiwan and had no connection with its chosen forum, Arkansas, other than its local counsel. *Id.* Thus, only minimal weight was accorded to the plaintiff's choice. *Id.* Here, on the contrary, Plaintiff is headquartered in Minnesota, its documents are kept here, many of its officers and witnesses reside here, and it performed many services for Defendants here. Thus, the Court gives considerable deference to Plaintiff's choice of forum.

### C.      Balancing the Interests

Balancing all of the above factors, one weighs slightly in favor of transferring the case to the Northern District of Illinois, and one weighs significantly in favor of maintaining the case in the District of Minnesota. All considered, a transfer would effectively shift the costs and inconvenience of litigation from Defendants to Plaintiff and would deprive Plaintiff, a Minnesota resident, of its chosen forum. Therefore, the Court concludes that a transfer of venue is not warranted.

## IV.      RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      Defendants' Motion to Dismiss (ECF No. 5) be **DENIED**;

2.      Defendants' Motion to Transfer/Change Venue (ECF No. 17) be **DENIED**; and

3.      Plaintiff be allowed to file an Amended Complaint correcting its assertion for federal subject matter jurisdiction.

Dated: May 8, 2012

  s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

### NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **May 23, 2012**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The District Judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the District Judge is not required to review a transcript or the District Judge directs otherwise.